# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Deandre Lasean Bradley (2015-0120253), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 3443 |
| | ) | |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| Tarry Williams, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The pending motion to dismiss for failure to state a claim filed by Defendants Tarry Williams, C/O Gowdy and C/O Bonds [50] is granted in part and denied in part. Plaintiff's motion for attorney representation [74] is denied without prejudice. This case remains set for status for Monday, October 17, 2016 at 8:30 a.m. Defendant Lt. K. Young, whose answer is overdue [*see* 73], is instructed to file his responsive pleading by October 17, 2016.

## STATEMENT

### I. Introduction

Plaintiff Deandre Lasean Bradley, a prisoner in the custody of the Illinois Department of Corrections, filed this *pro se* 42 U.S.C. § 1983 civil rights action, alleging that Defendants were deliberately indifferent to his safety. [15] In an order dated November 2, 2015, the Court found that Plaintiff's amended complaint stated a colorable claim for failure to protect against Defendants Lt. K. Young, Tarry D. Williams, C/O Gowdy, C/O Bonds, and six John Doe Defedants. [14][1]

On June 7, 2016, Defendants Williams, Gowdy, and Bonds moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on the basis that: (1) the complaint fails to allege Defendants' conduct constituted deliberate indifference to a substantial risk of harm to Plaintiff; (2) the complaint fails to allege a plausible constitutional claim against Defendants; and (3) the complaint fails to state a claim against Defendants in their official capacity. [50] Plaintiff filed a response. [69] Defendants filed a reply. [72] For the reasons discussed below, Defendants' motion is granted in part and denied in part.

---

[1] Defendant Lt. K. Young was served with the amended complaint on or about August 29, 2016; his answer was due September 19, 2016 [*see* 73]. Defendant Young, however, has yet to file a responsive pleading. As an additional matter, the Court notes that, to date, Plaintiff has not attempted to amend his complaint to name any of the John Doe Defendants.

1

## II. Facts

The amended complaint alleges that in February 2015, Lt. K. Young moved Plaintiff out of his cell and placed him with a prisoner he knew posed a risk to Plaintiff's safety. Lt. K. Young allegedly did this in response to Plaintiff's writing a Valentine's Day letter to a female correctional officer. [15 at p 4] Young knew the cellmate, who was serving a ninety-five year sentence, was a threat to Plaintiff's safety because, approximately one week prior, Young had witnessed the cellmate and Plaintiff get into a verbal altercation. [*Id.*] When Plaintiff was placed in the cell with the inmate, the inmate indicated that he would kill Plaintiff before Plaintiff was moved out of the cell. [*Id.* at p 5] For several days, the inmate continued to threaten Plaintiff. [*Id.*]

On February 16, 2015, Plaintiff "wrote a grievance stating what [he] was going through with [his] cellmate[,] the threats, the previous altercation, being in fear of [his] life constantly." Plaintiff marked the grievance an emergency so that it would be "responded to swiftly." Plaintiff alleges that he waited over a month, but received no response. [*Id.*] Plaintiff claims that Williams receives all grievances that are marked "emergency." [*Id.* at p 9]

Plaintiff wrote letters to counselors and passed notes to correctional officers explaining the situation with the inmate. Nothing happened. The inmate's behavior grew worse and, on March 19, 2015, the inmate took a swing at Plaintiff but missed. The inmate continued to make statements that placed Plaintiff in fear for his safety.

At some point, Plaintiff asked C/O Gowdy if he could speak with "a sergeant, lieutenant, crisis team member, anyone that could help [him]." [*Id.*] When asked why, Plaintiff indicated to C/O Gowdy that he was having a mental breakdown and needed help." Plaintiff alleges that he told C/O Gowdy this because he did not want to "tip [his] cellmate off." [*Id.*] Plaintiff also slipped C/O Gowdy a note "stating everything that was going on about the previous altercation, with what [his] cellmate was planning to do as far as pushing a C/O off the third gallery and his threats and attempts to assault me." [*Id.*] C/O Gowdy looked at Plaintiff and laughed, told Plaintiff that was not going to happen, and walked away. [*Id.* at p 6-7] Plaintiff alleges that during the 3-11 shift that same day and the 7-3 shift the following day, he also wrote six John Doe correctional officers "the same type of note." Plaintiff also passed a note to C/O Bonds. [*Id.* at p 7] Nothing happened.

On March 19, 2016, Plaintiff submitted an "emergency" grievance, complaining, among other things, that he was having a mental breakdown. This grievance also indicated that Plaintiff's cellmate "[was] trying to hurt [him]" and "[he] need[ed] to get out of [the] cell." [*Id.* at attach.]

On Sunday, March 22, 2015, Plaintiff "reminded" C/O Bonds about the letter he had given to him. Nothing happened. [*Id.* at 7] At some point, after having received no response to his pleas for assistance, Plaintiff cut his own arm so that he would be removed from the cell.

2

When a nurse saw what Plaintiff did, she ran and got help and Plaintiff was removed from the cell. [*Id.*]

### III. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't. of Prof'l. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include a short and plain statement of the claim, showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). These requirements ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 556 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (2007)).

### IV. Discussion

#### A. Plaintiff has Sufficiently Pled Deliberate Indifference

The Eighth Amendment's[2] prohibition against cruel and unusual punishment requires that prison officials 'take reasonable measures to guarantee the safety of the inmates.'" *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, (1994)). A plaintiff states a claim that prison officials failed to protect him from harm, in violation of the Eighth Amendment, by alleging that (1) he was "incarcerated under conditions

---

[2] Plaintiff appears to have been a prisoner at Stateville at the time of the actions giving rise to the complaint took place. As such, his claims arise under the Eighth Amendment (applicable to convicted prisoners), rather than the Fourteenth Amendment (applicable to detainees). The inquiry under both provisions of the Constitution is essentially the same. *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008) (*Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) (noting that there is "little practical difference between the two standards")). The Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). Against this backdrop, the Court addresses Plaintiff's failure to protect claim.

posing a substantial risk of serious harm," and (2) the "defendant-officials acted with 'deliberate indifference' to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). *See also Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010).

For purposes of this motion, Defendants only address the second prong of the inquiry, the subjective component. [50 at 5-8] They contest whether Plaintiff pleads facts sufficient to satisfy this requirement; specifically, Defendants argue that dismissal of the amended complaint, as against them, is warranted because the amended complaint "fails to allege facts showing that Williams, Bonds or Gowdy had the requisite knowledge for their conduct to constitute deliberate indifference. [50 at ¶ 18] A prison official acts with "deliberate indifference" when "he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it[,]" *Farmer*, 511 U.S. at 847, or "consciously turn[s] a blind eye toward an obvious risk," *Santiago*, 599 F.3d at 759. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citation omitted).

As an initial matter, the Court notes that, when screening the complaint, the Court used the same standard as that for a motion to dismiss, *see Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011); *see also Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009) (noting that motion under Rule 12(b)(6) challenges the sufficiency of the complaint), and found that Plaintiff has stated a failure to protect claim. As discussed in the Court's November 2, 2015 screening order, Plaintiff alleges that Defendant Young placed him in a cell with an inmate knowing that Plaintiff had previously had an altercation with the inmate. The inmate repeatedly threatened Plaintiff and tried to physically hit Plaintiff on one occasion, although he missed. Plaintiff complained to prison officials about the situation, including filing two emergency grievances. When Plaintiff received no responses from prison officials, he cut his own arm so they would remove him from the cell. [*see* 14 at p 2-3] Based on these allegations, the Court found that Plaintiff had sufficiently stated a failure to protect claim. [*Id.* at 2] Defendants have not pointed to anything in their motion that changes that determination.

To be sure, the amended complaint alleges that, after being placed in the cell with the inmate, Plaintiff asked C/O Gowdy if he could speak with "a sergeant, lieutenant, crisis team member, anyone that could help [him]." Plaintiff alleges that he indicated to C/O Gowdy that he was having a "mental breakdown and needed help." He also alleges that he slipped C/O Gowdy a note "stating everything that was going on about the previous altercation, with what [his] cellmate was planning to do as far as pushing a C/O off the third gallery and his threats and attempts to assault me." Plaintiff alleges that C/O Gowdy took no action. The amended complaint also alleges that Plaintiff passed a similar note to C/O Bonds, "reminded" C/O Bonds about the letter, and that C/O Bonds took no action. Taken as a whole, these factual allegations support an inference that C/O Gowdy and C/O Bonds were aware of a substantial risk of harm to Plaintiff.

4

In their motion, Defendants urge the Court to dismiss the complaint, as against C/O Gowdy and C/O Bonds, on the basis that it does not contain specific allegations about the notes that were allegedly passed to these two Defendants. [50 at ¶ 18; *see also* 72 at 2-3] But the particular contents of the notes and whether or not the Defendants read the notes (or otherwise knew of the contents of the notes) are issues that require further factual development of the record. As such, Defendants are free to re-raise this issue on a more fully developed record. For now though, Plaintiff's allegations against these two Defendants (as discussed above) sufficiently state a failure to protect claim, and Plaintiff may therefore proceed with his claim against C/O Gowdy and C/O Bonds.

The amended complaint also contains sufficient factual allegations to support an inference that Defendant Williams was aware of a substantial risk of harm to Plaintiff. Specifically, Plaintiff alleges that he filed two grievances (one on February 16, 2015 and one on March 19, 2015) complaining about the situation with his cellmate. Plaintiff alleges that he marked these as emergency grievances, and that Defendant Williams, who allegedly receives all such grievances, failed to take action.[3]

In their motion, Defendants argue that the Court must dismiss Plaintiff's claim, as against Williams, because documentation attached to Plaintiff's pleadings shows that Plaintiff was ultimately removed from his cellmate in response to his February 16, 2015 grievance. [50 at ¶ 20] This argument though fails for several reasons. First, Defendants' argument is premature given that the record has not yet been fully developed; as noted below (*see* footnote 3), Plaintiff did not attach his February 16, 2015 grievance to the complaint and, as such, it is unclear what issue(s), in particular, it raised. Second, Defendants' argument mischaracterizes the nature of the ARB's response. This form contains little information and simply indicates that: the "attached grievance" (which is not attached) was being returned to Plaintiff; that he should "contact IA for safety concerns"; and that, as of the date of that response (September 24, 2015 – some nine months after the filing of the February 16, 2015 grievance), Plaintiff was no longer housed at Stateville [*see* 69 at attach.]

Defendants also argue that dismissal of Plaintiff's claim, as against Williams, is warranted insofar as the March 19, 2015 grievance did not outline or otherwise alert Williams to a specific threat to Plaintiff's safety. [50 at ¶ 20] Rather, Defendants argue that Plaintiff "merely sought that Williams fire C/O Gowdy and provide a "crisis team." [*Id.*] Defendants, however, once again offer a selective (and not entirely accurate) reading of Plaintiff's pleadings. As noted above, the lengthy March 19, 2015 grievance stated not only that Plaintiff wanted Williams to fire C/O Gowdy and provide Plaintiff with a crisis team, but also indicated that he was taking psych medication, that he was "going through a lot," and needed "to talk to a crisis

---

[3] The Court notes that the February 16, 2015 grievance was not attached to Plaintiff's amended complaint; his March 19, 2015 grievance and an unrelated March 3, 2015 grievance were attached [*see* 15 at attach.] In his reply to Defendant's motion and their argument that the March 3, 2015 grievance does not relate to the allegations at issue in the complaint, Plaintiff attaches a copy of the ARB's "Return of Grievance or Correspondence" which shows that Plaintiff's February 16, 2015 grievance was received on April 8, 2015 and was related to "cell assignment – fears for safety." [69 at attach.]

5

team before [he] d[id] something [he] might regret." This grievance recounted that Plaintiff had told C/O Gowdy that he needed the crisis team and that he took no action, and also indicated that he was having a "mental breakdown." This grievance also indicated that Plaintiff's cellmate was trying to hurt him and that he "need[ed] to get out of this cell." [15 at attach.] Moreover, the case that Defendants' cite to in support of their argument -- *Birch v. Jones*, 2004 WL 2125416, *5 (N.D. Ill. 2014), a case in which the court found that Plaintiff had failed to show the defendant knew through a written grievance that the plaintiff's cellmate posed a substantial risk because the grievance provided only "vague allusion to potential discord" but stated no specific threats or basis for concerns of safety -- was decided at summary judgment after development of the record.

For the reasons set forth above, the Court finds that Plaintiff's allegations in the amended complaint are sufficient to survive the Defendants' motion to dismiss. Plaintiff may proceed with his failure to protect claim against Defendants Williams, C/O Gowdy, and C/O Bonds. As such, the Court denies Defendants' motion to dismiss as to this issue.

### B.    Qualified Immunity

Defendants argue that, even if Plaintiff has stated a viable constitutional claim in his amended complaint, they are entitled to qualified immunity with respect to his claim. [50 at 8-9]

"Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Most qualified immunity claims, however, are too fact-intensive for courts to decide on a Rule 12(b)(6) motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008).

As discussed above, the record currently before the Court contains gaps and is undeveloped in a number of respects. Because this case is still in its early stages and the facts surrounding the events and circumstances at issue in the amended complaint are not entirely clear, dismissal on the basis of qualified immunity is not appropriate. *See id.*; *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").

Accordingly, the Court dismisses Defendants' motion to dismiss as to this issue.

### C. Plaintiff has Failed to State a Claim against Defendants in their Official Capacity

Defendants argue that the Eleventh Amendment bars all official-capacity claims[4] asserted against them, and thus the Court must dismiss these claims. [50 at p 9-10] The Court agrees.

The Eleventh Amendment bars suits for damages brought against state officials in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994) ("The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Therefore, Plaintiff may not, under § 1983, seek damages against the State Defendants in their official capacities.

A state official can be sued in his official capacity for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). As Defendants point out [*see* 50 at p 10], however, Plaintiff does not indicate that he seeks injunctive relief, nor could he given that he is no longer at Stateville. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot . . . ."). *See also Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 891 (7th Cir. 2013); *Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006). Notably, Plaintiff does not allege that he will be transferred back to Stateville.

For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's official capacity claims against them. Plaintiff may proceed in this lawsuit against Defendants Williams, C/O Gowdy and C/O Bonds only in their individual capacities.

### V. Plaintiff's Request for Attorney Representation

Last, Plaintiff's current motion for attorney representation [74] is denied at this time. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the Court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, a court must first consider whether the plaintiff has made reasonable attempts to secure counsel on his own.

---

[4] In their motion, Defendants point out that the amended complaint does not specify whether they are being sued in their individual or official capacities. [50 at p 9-10] In response to Defendants' motion to dismiss, Plaintiff requests that his complaint be construed to include a claim against the Defendants in their official capacities or that he be given leave to amend to include such a claim. [69 at p 2-3] Doing so, however, would be futile for the reasons discussed above.

*Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). If so, the court must examine "whether the difficulty of the case--factually and legally--exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655.

Factors to consider include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (holding that it is difficult to make an accurate determination regarding a plaintiff's ability to litigate the matter when case is still in "its infancy"); (2) plaintiff's submissions and pleadings, *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (well-written pleadings and appearance that plaintiff can follow instructions indicate that counsel is not needed); (3) medical and mental health issues, Id.; (4) transfer to a different facility, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (transfer to a different facility may impede plaintiff's ability to obtain evidence including affidavits and/or declarations from others to support his claim); (5) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt*, 503 F.3d at 655; *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (recruitment of counsel required for a blind inmate with a tenth-grade education); *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014) (enlistment of counsel was necessary for a functionally illiterate inmate); and (6) complexity of the case, *Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503F.3d at 655-56.

Here, Plaintiff has not demonstrated that he has made any attempt to retain counsel on his own in this matter. Indeed, his is motion is silent on this issue. Nonetheless, Plaintiff appears capable of continuing to litigate this case on a *pro se* basis. The claim that Plaintiff asserts in his amended complaint is not overly complex and his submissions, at least to date, have been clear, articulate, and demonstrate his ability to follow instructions and communicate his litigation needs to the Court. Accordingly, the Court denies Plaintiff's current request for attorney representation [74]. If this case reaches a point where representation by an attorney appears warranted, Plaintiff may renew his request for attorney representation and the Court will consider whether to recruit one at that time.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [50] is granted in part and denied in part. The Court dismisses Plaintiff's claims against Defendants Williams, C/O Gowdy, and C/O Bonds in their official capacities. Plaintiff may proceed on his failure to protect claim against Defendants Williams, C/O Gowdy and C/O Bonds in their individual capacities. Plaintiff's motion for attorney representation [74] is denied without prejudice.

**Dated: October 12, 2016**

_____
**AMY J. ST. EVE**
**United States District Court Judge**